FILED: September 30, 2020

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 20-2022
(3:20-cv-01730-JMC)
_____

KYLON MIDDLETON; DEON TEDDER; AMOS WELLS; CARLYLE DIXON; TONYA WINBUSH; ERNESTINE MOORE; SOUTH CAROLINA DEMOCRATIC PARTY; DNC SERVICES CORPORATION/DEMOCRATIC NATIONAL COMMITTEE; DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE,

          Plaintiffs – Appellees,

v.

MARCI ANDINO, in her official capacity as Executive Director of the South Carolina State Election Commission; JOHN WELLS, in his official capacity as Chair of the South Carolina State Election Commission; CLIFFORD J. ELDER, in his official capacity as member of the South Carolina State Election Commission; SCOTT MOSELEY, in his official capacity as member of the South Carolina State Election Commission,

          Defendants – Appellants,

JAMES H. LUCAS, Speaker of the South Carolina House of Representatives; HARVEY PEELER, in his capacity as President of the South Carolina Senate,

          Intervenors/Defendants – Appellants,

SOUTH CAROLINA REPUBLICAN PARTY,

          Intervenor – Appellant.

------------------------------

STATE OF SOUTH CAROLINA,

Amicus Supporting Appellants.

_____

O R D E R

_____

Upon en banc consideration of submissions relative to appellants' emergency motion to stay the district court's injunction, the court denies the motion for a stay pending appeal.  Chief Judge Gregory and Judges Motz, King, Keenan, Wynn, Diaz, Floyd, Thacker, and Harris voted to deny the motion for stay.  Judges Wilkinson, Niemeyer, Agee, Quattlebaum, and Rushing voted to grant the motion for stay.  Judge Richardson is recused in the case.  Judge King and Judge Wynn filed opinions concurring in the denial of a stay. Judge Wilkinson and Judge Agee filed a dissenting opinion.

Entered at the direction of Chief Judge Gregory.

For the Court

/s/ Patricia S. Connor, Clerk

2

KING, Circuit Judge, concurring in the denial of a stay pending appeal:

I write today to emphasize that, by enjoining the witness requirement for absentee voting in the November general election, the district court has preserved the electoral status quo in South Carolina — the status quo of *not* having a witness requirement during the COVID-19 pandemic. In so doing, the court carefully weighed the competing interests and properly concluded that imposing the witness requirement now would likely unconstitutionally burden the fundamental right to vote, irreparably harm voters, and disserve the public interest. Thus, our en banc Court is wholly justified in denying the emergency motion to stay the district court's preliminary injunction pending appeal. Indeed, to stay the injunction so close to the election would engender mass voter confusion and other problems that the Supreme Court warned against in *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).

The district court's findings of fact and conclusions of law are set forth in its thorough and well-reasoned decision of September 18, 2020. *See Middleton v. Andino*, No. 3:20-cv-01730 (D.S.C. Sept. 18, 2020), ECF No. 109 (the "Order and Opinion"). In short, South Carolina has in the past restricted absentee voting to those with a qualifying excuse. *See* S.C. Code Ann. § 7-15-320. The State has also required that absentee voters have a witness sign their absentee ballot return envelope. *Id.* § 7-15-380. Because of the COVID-19 pandemic, however, South Carolina expanded absentee voting to all voters during this year's June primary and November general elections. Meanwhile, pursuant to a prior, unappealed decision of the district court, the State was enjoined from enforcing the witness requirement with respect to absentee ballots cast in the June primary.

3

The June primary was thus the first election for thousands of South Carolinians to vote by absentee ballot, and those citizens have only voted absentee when no witness was necessary. In these circumstances, as the district court explained in enjoining the witness requirement for the November general election, there is "a new status quo" in South Carolina. *See* Order and Opinion 39. The court underscored that for the voters who may expect the witness requirement, it would not "pose any difficulty not to have to comply with it." *Id.* at 40 (internal quotation marks omitted). But the witness requirement "would likely . . . confuse and deter voters" who, based on the rules of the June primary, reasonably expect the witness requirement to be suspended for the November general election, too. *Id.* at 39-40 (internal quotation marks omitted).

That voters in the November general election would be blindsided by the witness requirement is all the more probable because, since the Spring, the spread of COVID-19 has worsened in South Carolina. Any absentee voter or witness would "run[] the risk of unwittingly transferring the virus when complying with the [witness requirement]." *See* Order and Opinion 53. Moreover, COVID-19 disproportionately endangers Black and elderly citizens, who are more likely to live alone and lack ready access to a witness for absentee voting. *See id.* at 54 (highlighting evidence that "voting by mail carries less risk than voting in person" and that, "[f]or those voters who live alone, casting [an absentee] ballot without a witness signature carries less risk than casting a ballot with a witness signature"). Strikingly, if the witness requirement were enforced during the November general election, even voters known to be sick with COVID-19 would have to procure a witness in order to vote absentee.

4

Relying on this and other evidence, the district court determined that reinstating the witness requirement for the November general election would constitute "a significant burden" on voters. *See* Order and Opinion 57. As for South Carolina's justifications for enforcing the witness requirement during the COVID-19 pandemic — namely ensuring voter integrity and investigating absentee ballot fraud — the court concluded that they are "undercut by an utter dearth of absentee fraud." *See id.* at 58-59. Significantly, there has been scant evidence of any fraud during the June primary and no "evidence of the type of fraud that could be prevented by the [witness requirement] in the first place." *Id.* at 59 (internal quotation marks omitted).

To be sure, a longtime member of the state police testified that the witness signature could be "a significant investigative lead" when investigating absentee ballot fraud. *See* Order and Opinion 58-59. But state election administrators — including the lead defendant here, South Carolina Election Commission Executive Director Marci Andino — have conceded that they do not use the witness requirement to combat fraud, as the Election Commission has no ability to verify witness signatures. Andino has repeatedly recommended against the witness requirement as being not only ineffective to deter fraud, but also a barrier to lawful voting. Furthermore, the Election Commission has already verified a voter's identity before sending an absentee ballot, there are no qualifications as to who may serve as a witness for absentee voting, and a witness may not even know the identity of the voter whose ballot return envelope the witness signs. In the words of the district court, the witness requirement apparently "provides ineffectual support towards solving an insubstantial problem in South Carolina." *Id.* at 62.

5

Weighing the competing interests, the district court concluded that "the character and magnitude of the burdens imposed on [voters] in having to place their health at risk during the COVID-19 pandemic likely outweigh the extent to which the [witness requirement] advances [South Carolina's] interests of investigating voter fraud." *See* Order and Opinion 62. Accordingly, the court ruled that the plaintiffs have shown a strong likelihood of success on the merits, as well as a likelihood that, without a preliminary injunction, they would suffer irreparable harm. The court also ruled that the balance of the equities and the public interest favor enjoining the witness requirement for the November general election. *See id.* at 64 (explaining that "[t]he public interest is clearly in remedying dangerous or unhealthy situations and preventing the further spread of disease," particularly "in the context of the worst pandemic this state, country, and planet has seen in over a century" (internal quotation marks omitted)).

Put simply, the decision of the district court is measured, compelling, and soundly supported both factually and legally. It protects countless lawful voters who otherwise would have to choose between avoiding needless exposure to a deadly virus and exercising their fundamental right to vote. As such, the extraordinary relief of a stay pending appeal is in no way warranted under the controlling legal principles that are applicable here. *See Nken v. Holder*, 556 U.S. 418, 433-34 (2009) ("A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion . . . ."). Accordingly, I commend our en banc majority for acting

6

swiftly to deny the requested stay of the district court's injunction.[*]

---

[*] On a final note, I recognize that my dissenting colleagues see the district court's injunction and our Court's decision not to stay it as some sort of illegitimate intrusion into South Carolina's prerogatives to set election rules. The dissent, however, refuses to acknowledge that the district court has preserved the electoral status quo in South Carolina for the November general election. Instead, the dissent asserts that the court improperly changed the rules shortly before the election — when the court was actually enjoining the State's effort to change the rules shortly before the election. The dissent also disregards the ample evidence underlying the court's conclusion that reinstating the witness requirement now, while COVID-19 continues its devastating spread, would significantly burden voters. Rather, the dissent invokes other, preferred evidence downplaying the difficulty and health risks of securing a witness and then declares that the witness requirement would be no burden at all. Lastly, the dissent accuses the district court of improperly minimizing South Carolina's interest in preventing voter fraud, but without acknowledging much of the evidence that led the court to its cogent observation that the witness requirement apparently "provides ineffectual support towards solving an insubstantial problem in South Carolina." *See* Order and Opinion 62.

At bottom, the dissent urges unquestioning acceptance of the State's dubious justification for the witness requirement, along with essentially unfettered power of the state government to make voting harder in the name of "preventing voter fraud." I simply will not abide such an abdication of the courts' authority and obligation to protect the precious and fundamental right to vote. *See United States v. Anderson*, 481 F.2d 685, 699 (4th Cir. 1973) (pronouncement by our Judge Russell that "[n]o right is more precious than the right of suffrage"), *aff'd*, 417 U.S. 211 (1974).

WYNN, Circuit Judge, concurring in the denial of a stay pending appeal:

Today, this Court wisely reinstates the district court's order and so helps South Carolinians of all political persuasions exercise their constitutionally guaranteed right to vote. I write separately because I deeply disagree with my dissenting colleagues' description of our Court's action as a "[s]elective intervention[] by the courts [that] will create the appearance of partisanship." Dissenting Op. at 13.

Our Court does not selectively intervene in election cases for partisan reasons: we resolve justiciable controversies. Put simply, this Court resolves disputes based on legal principles, not political preferences. And despite our dissenting colleagues' unfortunate rhetoric to the contrary, this case illustrates that basic proposition. The legal dispute here arises because the majority has one understanding of what constitutes the applicable status quo in this case for *Purcell* purposes, the dissent another. That single, principled difference explains why today's divided vote is based on legal principles, not political preferences.

WILKINSON and AGEE, Circuit Judges, dissenting from the denial of a stay:

We would stay the district court's order enjoining enforcement of a witness signature requirement for absentee ballots in S.C. Code §7-15-380. That order represents a stark interference with South Carolina's electoral process right in the middle of the election season.[1]

To merit a stay pending appeal, appellants must show they are likely to succeed on the merits, that they will be irreparably injured absent a stay, that the equitable balance favors a stay, and that a stay benefits the public. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

Appellants are likely to succeed on appeal because appellees have a legally unsupportable case. The Constitution makes it clear that the principal responsibility for setting the ground rules for elections lies with the state legislatures. U.S. Const. art. I, §4, cl. 1 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof . . . ."). Thus, "the federal Constitution provides States—not federal judges—the ability to choose among many permissible options when designing elections." *Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) (per curiam). The district court's order upends this whole structure and turns its back upon our federalist system.

The majority's disregard for the Supreme Court is palpable. The Supreme Court has repeatedly cautioned us not to interfere with state election laws in the "weeks before an

---

[1] This opinion modifies our earlier opinion of September 25, 2020, dissenting from the grant of rehearing *en banc*. The modification is to the extent necessary to respond to Judge King's concurring opinion on the motion for a stay now before the *en banc* court.

election." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam); *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam). The district court failed to give this command proper weight. Although we share the district court's concerns about COVID-19's potential impact on elections, the pandemic does not give judges "a roving commission to rewrite state election codes." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 394 (5th Cir. 2020).

The majority is wrong to claim that enjoining a state law plainly in place for the election is somehow not disruptive. It equates primary voting with the far different and larger operation of a general election. The State has a right to defend its laws under which it has decided that its election should be conducted and its interest in ensuring the integrity of a general election presents much different questions from those posed by an intra-party primary. As further evidence that the district court's preliminary injunction did in fact change the rules shortly before the election, we can look to the language of the district court's judgment, which orders the State to launch a publicity campaign notifying voters that this requirement will not be enforced. *See* J.A. 147 (ordering Appellants to "immediately and publicly inform South Carolina voters about the elimination of the witness requirement for absentee voting" in coordination with election officials and to do so through various specified social media outlets and websites). This hardly sounds to us like some ordinary defense of the "status quo." *See* Concurring Op. 3.

Finally, even if an election were not a few weeks away, South Carolina's law is commonplace and eminently sensible. It is designed to combat voter fraud, a fight which "the State indisputably has a compelling interest" in winning. *Purcell*, 549 U.S. at 4

10

(quoting *Eu v. San Francisco Cty. Democratic Central Comm.,* 489 U.S. 214, 231, (1989)). That is not an abstract concern. Just last year, the election in North Carolina's 9th Congressional district was overturned on the basis of absentee ballot fraud. *See* Ely Portillo & Jim Morrill, *Mark Harris calls for new election in 9th District*, Charlotte Observer (Mar. 7, 2019), https://www.charlotteobserver.com/news/politics-government/article2265505 55.html.

Just think of all the areas in which the law requires witnesses and notaries to inspire trust in official documents and acts and to convey their authenticity. It is therefore unsurprising that the courts of appeals have resisted overturning these laws. *See Democratic Nat'l Comm., et al. v. Bostelmann, et al.*, No. 20-1538, 2020 WL 3619499 (7th Cir. Apr. 3, 2020) (reversing district court's preliminary injunction against witness requirement for absentee ballots); *see also Common Cause Rhode Island v. Gorbea*, 970 F.3d 11, 16 (1st Cir. 2020) (per curiam) (stating it would be "inclined" to stay the preliminary injunction against a requirement that absentee voters have *two* witnesses absent "two unique factors" present in that case).[2]

---

[2]     We wish to express our respect for the able district judge who like all of us is dealing with sensitive issues in challenging circumstances. Although we would ordinarily ascribe considerable weight to a district court's factual findings, the district court made two legal errors that undermine them. First, the district court gave inadequate weight to *Purcell*'s command that it not interfere with a state voting procedure shortly before an election. It erred in relying on the First Circuit's decision in *Gorbea*, J.A. 60, which was materially different because Rhode Island had agreed in a consent decree to eliminate a requirement that absentee voters obtain *two* signatures and no branch of Rhode Island's government sought to defend the requirement *Gorbea*, 970 F.3d at 16. None of those essential facts are present here.

Second, appellants will suffer irreparable injury in the absence of a stay. All three branches of South Carolina's government have addressed whether absentee voters should be required to have a witness. The General Assembly passed two pieces of legislation on the subject, the Governor signed both bills, and the South Carolina Supreme Court heard a case challenging the witness requirement. No member of our Court now holds elected office, much less an elected or appointed office of the State of South Carolina. By substituting its own policy choice for that of the representatives of the Palmetto State, the district court's injunction robs South Carolina of its sovereign prerogative to determine the rules for its elections. Enjoining a "State from conducting [its] elections pursuant to a statute enacted by the Legislature . . . seriously and irreparably harm[s] [the State]." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018).

Third, it is clear that the equitable balance favors appellants. This law is not

---

Second, the district court legally erred in minimizing South Carolina's interest in preventing voter fraud, suggesting this interest is not legitimate because of "an utter dearth of absentee voter fraud." J.A. 80. South Carolina is not required to produce evidence of voter fraud to demonstrate it has a legitimate interest in maintaining the integrity of its elections. The Supreme Court has *repeatedly* held that a State "indisputably has a compelling interest" in combatting voter fraud. *Purcell*, 549 U.S. at 4 (quoting *Eu*, 489 U.S. at 231); *see also John Doe No. 1*, 561 U.S. 186, 197 (2010) ("The State's interest is particularly strong with respect to efforts to root out fraud, which not only may produce fraudulent outcomes, but has a systemic effect as well . . . ."). Indeed, the Supreme Court stated that "[t]here is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters" in a case where the "record contain[ed] no evidence of any such fraud actually occurring in Indiana at any time in its history." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 194–96 (2008). The district court thus erred by suggesting the State lacked a compelling interest in combatting voter fraud based on its failure to prove it is a major problem. J.A. 80. However, we also note that South Carolina *did* present evidence of voter fraud, even though it did not need to. *See, e.g.*, J.A. 408–26 (showing evidence of voter fraud in South Carolina).

12

burdensome to appellees. Only a single witness is required. Most people can easily call upon a family member or friend to be their witness. Dr. Cassandra Salgado, the division director for infectious diseases at the Medical University of South Carolina, testified that the witness requirement would not "pose a significant risk" because it takes little time and can be done with facemasks, social distancing, and proper hygiene. J.A. 406.

Indeed, enjoining the witness requirement might result in absentee voting becoming *more* difficult. The legislature chose to make absentee balloting widely available in response to COVID-19, but it also specifically debated whether to maintain the witness requirement to increase confidence in the election's integrity. Both houses of the General Assembly rejected proposals to eliminate the requirement. *See* S. Journal No. 47 (Sept. 2, 2020); H. Journal No. 40 (Sept. 15, 2020); H. Journal No. 39 (June 24, 2020). If the courts ignore these legislative compromises and strip away safeguards, legislatures will be tempted to rescind their expansion of absentee voting.

Fourth, the district court's preliminary injunction is not in the public interest. More and more it appears, political parties seem to be bringing these election law challenges in an effort to gain partisan advantage. This trend is deeply disturbing. Selective interventions by the courts in these cases will create the appearance of partisanship. They undermine our most valued asset, the public's trust and confidence in the judiciary. They also create confusion and make it more difficult for the States to run their elections. It is a challenging enough task to run an election in these trying circumstances without the uncertainty and upheaval of injunctions, stays, appeals, etc. This "judicially created confusion" is one reason why the Supreme Court has prohibited lower courts from changing voting rules

13

shortly before elections. *See Republican National Committee*, 140 S. Ct. at 1207.

A smoothly run election is a beautiful thing. But it does not just happen. Electoral boards and commissions have to design and print ballots, instruct voters on correct procedures, train workers who staff the precincts and tabulate results, and make sure that mail-in balloting and early and election-day voting are all running with scrupulous impartiality and unimpeachable competence. And yet here we come, gumming up the works and making a hard task even harder. The majority is right to be sensitive to the importance of ensuring that all eligible voters be able to cast their ballots. But that cannot mean that neutral rules neutrally applied in the interest of honest elections can just be tossed aside every time an election-eve plaintiff alleges an adverse effect. Such challenges would be endless, consume scarce time and resources, and lead to open season on state election laws in federal court.

It matters not which party brings this challenge, or from which State it comes. What matters is that confusion and disruption will beset the States' electoral processes if this sort of pre-election litigation becomes commonplace. Appellants should seek to vindicate promptly their constitutional prerogatives before the only tribunal that can finally and definitively bring an end to this mischief: the United States Supreme Court.