FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ARIZONA DEMOCRATIC PARTY;
DEMOCRATIC NATIONAL
COMMITTEE; DSCC,

        Plaintiffs-Appellees,

  v.

KATIE HOBBS, in her official capacity as
Arizona Secretary of State,

        Defendant-Appellee,

STATE OF ARIZONA,

    Intervenor-Defendant-
    Appellant,

 and

EDISON WAUNEKA, in his official
capacity as Apache County Recorder;
DAVID STEVENS, in his official capacity
as Cochise County Recorder; PATTY
HANSEN, in her official capacity as
Coconino County Recorder; SADIE JO
BINGHAM, in her official capacity as Gila
County Recorder; WENDY JOHN, in her
official capacity as Graham County
Recorder; SHARIE MILHEIRO, in her
official capacity as Greenlee County
Recorder; RICHARD GARCIA, in his
official capacity as La Paz County Recorder;

No.   20-16759

D.C. No. 2:20-cv-01143-DLR
District of Arizona,
Phoenix

ORDER

ADRIAN FONTES, in his official capacity as Maricopa County Recorder; KRISTI BLAIR, in her official capacity as Mohave County Recorder; MICHAEL SAMPLE, in his official capacity as Navajo County Recorder; F. ANN RODRIGUEZ, in her official capacity as Pima County Recorder; VIRGINIA ROSS, in her official capacity as Pinal County Recorder; SUZANNE SAINZ, in her official capacity as Santa Cruz County Recorder; LESLIE HOFFMAN, in her official capacity as Yavapai County Recorder; ROBYN POUQUETTE, in her official capacity as Yuma County Recorder,

Defendants,

REPUBLICAN NATIONAL COMMITTEE; ARIZONA REPUBLICAN PARTY; DONALD J. TRUMP FOR PRESIDENT, INC.,

Intervenor-Defendants.

ARIZONA DEMOCRATIC PARTY; DEMOCRATIC NATIONAL COMMITTEE; DSCC,

Plaintiffs-Appellees,

v.

KATIE HOBBS, in her official capacity as Arizona Secretary of State,

Defendant-Appellee,

REPUBLICAN NATIONAL

No.    20-16766

D.C. No. 2:20-cv-01143-DLR

COMMITTEE; ARIZONA REPUBLICAN PARTY; DONALD J. TRUMP FOR PRESIDENT, INC.,

        Intervenor-Defendants-Appellants,

and

EDISON WAUNEKA, in his official capacity as Apache County Recorder; DAVID STEVENS, in his official capacity as Cochise County Recorder; PATTY HANSEN, in her official capacity as Coconino County Recorder; SADIE JO BINGHAM, in her official capacity as Gila County Recorder; WENDY JOHN, in her official capacity as Graham County Recorder; SHARIE MILHEIRO, in her official capacity as Greenlee County Recorder; RICHARD GARCIA, in his official capacity as La Paz County Recorder; ADRIAN FONTES, in his official capacity as Maricopa County Recorder; KRISTI BLAIR, in her official capacity as Mohave County Recorder; MICHAEL SAMPLE, in his official capacity as Navajo County Recorder; F. ANN RODRIGUEZ, in her official capacity as Pima County Recorder; VIRGINIA ROSS, in her official capacity as Pinal County Recorder; SUZANNE SAINZ, in her official capacity as Santa Cruz County Recorder; LESLIE HOFFMAN, in her official capacity as Yavapai County Recorder; ROBYN POUQUETTE, in her official capacity as Yuma County Recorder,

        Defendants,

STATE OF ARIZONA,

        Intervenor-Defendant.

Before: O'SCANNLAIN, RAWLINSON, and CHRISTEN, Circuit Judges.

In this case, the Arizona Democratic Party and others have challenged Arizona's law requiring early voters to have signed their ballots by 7:00 PM on Election Day in order to have their votes counted. *See* Ariz. Rev. Stat. §§ 16-548(A), 16-552(B). On September 10, 2020, less than two months before the upcoming presidential election, the district court enjoined the law and ordered Arizona to create and to institute a new procedure that would grant voters who failed to sign their ballots up to five days *after* voting has ended to correct the error. The State of Arizona and others have appealed that decision to our court and have sought, in the meantime, a stay of the district court's injunction pending adjudication of the appeal.

## I

The Arizona law at issue is straightforward. First, Arizona requires early voters to return their ballots along with a signed ballot affidavit in order to guard against voter fraud—a requirement the plaintiffs do not challenge. Ariz. Rev. Stat. § 16-548(A). These early ballots must be received by polling officials by 7:00 PM on Election Day so that they can be counted. *Id.* And, to enforce these requirements, any ballot with an insufficient affidavit (including one that is

missing a signature) will be disallowed by polling officials. *Id.* § 16-552(B). If an early voter returns a ballot with an unsigned affidavit, Arizona has afforded him or her an opportunity to cure the problem, but only until the general Election Day deadline. *See* State of Arizona, *Elections Procedures Manual* 68–69 (Dec. 2019).

## II

In evaluating a motion for a stay pending appeal, we consider whether the applicant has made a strong showing of likelihood of success on the merits, whether the applicant will be irreparably injured without a stay, whether a stay will substantially injure the other parties, and where the public interest lies. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006–07 (9th Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

Here, as explained below, the factors weigh in favor of a stay.

## A

First, the State has shown that it is likely to succeed on the merits. As observed by the district court, Arizona's Election Day signature deadline imposes, at most, a "minimal" burden on those who seek to exercise their right to vote. Under the familiar "*Anderson-Burdick*" framework for evaluating ballot-access laws, a nondiscriminatory, minimally burdensome voting requirement will be upheld so long as it reasonably advances important regulatory interests. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *De La Fuente*

*v. Padilla*, 930 F.3d 1101, 1105 (9th Cir. 2019).  The State has made a strong showing that its ballot-signature deadline does so.  All ballots must have *some* deadline, and it is reasonable that Arizona has chosen to make that deadline Election Day itself so as to promote its unquestioned interest in administering an orderly election and to facilitate its already burdensome job of collecting, verifying, and counting all of the votes in timely fashion.  Indeed, though the parties dispute the magnitude of the additional burden, there can be no doubt (and the record contains evidence to show) that allowing a five-day grace period beyond Election Day to supply missing signatures would indeed increase the administrative burdens on the State to some extent.

The plaintiffs argue that the State's interest is undermined by the fact that Arizona recently enacted a narrow exception to the general Election Day deadline for instances in which a polling official believes that the signature on a ballot affidavit does not match the voter's signature in the voter registration record.  In such a case, the voter will be notified and he or she may cure the problem within five days after Election Day.  *See* Ariz. Rev. Stat. § 16-550(A).  But the State has offered a reasonable explanation for why it has granted a limited opportunity to correct such "mismatched" signatures but not to supply completely missing signatures: whereas the failure to sign one's ballot is entirely within the voter's control, voters are not readily able to protect themselves against the prospect that a

6

polling official might subjectively find a ballot signature not to match a registration signature. It is rational, then, that the State might voluntarily assume some additional administrative costs to guard against the risk of losing such votes at potentially no fault of the voters. But the State may still reasonably decline to assume such burdens simply to give voters who completely failed to sign their ballots additional time after Election Day to come back and fix the problem. *See also New Ga. Project v. Raffensperger*, — F.3d —, 2020 WL 5877588, at *3 (11th Cir. 2020) (concluding that Georgia's Election-Day absentee ballot deadline is "easily" justified by the State's interests in "conducting an efficient election, maintaining order, quickly certifying election results, and preventing voter fraud").[1]

## B

The standard for granting a stay is a "sliding scale." *Al Otro Lado*, 952 F.3d at 1007. Under this approach, the elements of the test are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

---

[1] The State is also likely to succeed in showing that the district court "erred in accepting the plaintiffs' novel procedural due process argument," because laws that burden voting rights are to be evaluated under the *Anderson/Burdick* framework instead. *New Ga. Project*, — F. 3d —, 2020 WL 5877588, at *3; *see also Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011) (observing that "a single analytic framework" applies in voting-rights cases, rather than "separate analyses for . . . First Amendment, Due Process, or Equal Protection claims").

2011)).  This consideration drives our decision here: even though the plaintiffs contend that the changes to Arizona's law will likely affect only a small number of voters and create a relatively low administrative burden on the State, the State's probability of success on the merits is high.  *See also Abbott v. Perez*, 138 S. Ct. 2305, 2324 & n.17 (2018) (recognizing irreparable harm to a State's interests where a court order "barr[ed] the State from conducting this year's elections pursuant to a [constitutionally permissible] statute enacted by the Legislature").  And, as we rapidly approach the election, the public interest is well served by preserving Arizona's existing election laws, rather than by sending the State scrambling to implement and to administer a new procedure for curing unsigned ballots at the eleventh hour.  Indeed, the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."  *Republican Nat'l Committee v. Democratic Nat'l Committee*, 140 S. Ct. 1205, 1207 (2020) (per curiam); *see also, e.g.*, *North Carolina v. League of Women Voters of N.C.*, 574 U.S. 927 (2014) (mem.) (staying a lower court order that changed election laws thirty-two days before the election); *Husted v. Ohio State Conference of NAACP*, 573 U.S. 988 (2014) (mem.) (staying a lower court order that changed election laws sixty-one days before the election); *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam) (staying a lower court order that changed election laws thirty-three days before the election).  As discussed, the

8

plaintiffs by contrast stand to face only the "minimal" burden of ensuring that voters sign their ballot affidavits by 7:00 PM on Election Day if the law remains in effect.

III

The appellants' Emergency Motions for a Stay Pending Appeal (Docket Entry No. 4 in 20-16759 and Docket Entry No. 2 in 20-16766) are GRANTED.[2]

---

[2] We also GRANT the motions to file amicus briefs in support of the State of Arizona's emergency motion (Docket Entry Nos. 8, 15, and 17 in 20-16759) and the State of Arizona's Motion for Leave to File a Consolidated Reply Brief (Docket Entry No. 21 in 20-16759).