IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

FILED
APR 1 3 2022
Clerk of the Appellate Courts
Rec'd By _____

## AKILAH MOORE ET AL. v. WILLIAM LEE ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 22-0287-IV**
Chancellor Russell T. Perkins, Judge J. Michael Sharp, and
Chancellor Steven W. Maroney

_____

### No. M2022-00434-SC-RDO-CV

_____

SHARON G. LEE, J., dissenting.

On April 6, 2022, a three-judge panel[1] granted a temporary injunction enjoining the defendants, William Lee, as Governor of Tennessee, in his official capacity, Tre Hargett, as Tennessee Secretary of State, in his official capacity, and Mark Goins, as Tennessee Coordinator of Elections, in his official capacity, from enforcing or giving effect to the reapportionment plan for the Tennessee Senate. The Senate reapportionment plan creates four senatorial districts within Davidson County that are not consecutively numbered (the districts are numbered 17, 19, 20, and 21). Yet article II, section 3, of the Tennessee Constitution requires that in a county with more than one senatorial district, the districts have to be numbered consecutively. The three-judge panel gave the General Assembly fifteen days (until April 21, 2022) to remedy the constitutional defect and extended the qualifying deadline for prospective Senatorial candidates from April 7, 2022, to May 5, 2022.

On appeal, the defendants argue first, that the plaintiffs, who are Tennessee voters, lack standing to challenge the Senate plan, and second, that the three-judge panel erred by not considering the harm to the defendants and the public interest. The Court pretermits the standing issue. The Court fails to properly apply the abuse of discretion standard of

_____

[1] Under Tennessee Code Annotated section 20-18-101(a)(1)(A) (2021), challenges to the constitutionality of a redistricting or apportionment plan must be heard by a three-judge panel. Under section 20-18-101(b)(1) and (2), the Supreme Court selects two trial judges to sit with the trial judge to whom the civil action was originally assigned. The trial judges must be from each of the grand divisions of the state. Here, the three-judge panel consisted of experienced and respected trial court judges from East, Middle and West Tennessee.

review to the three-judge panel's decision on the merits and instead substitutes its judgment for that of the panel in deciding that the harm to the defendants outweighed the harm to the plaintiffs. There is sufficient evidence supporting the three-judge panel's decision that extending the candidate qualifying deadline to May 5, 2022, to remedy a constitutional defect will allow election officials enough time to comply with other election deadlines, and it will not cause any disruption or voter confusion.

In our review of the three-judge panel decision, we do not substitute our judgment for that of the panel. *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 306 (Tenn. 2020) (quoting *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019)). Instead, we defer to the judgment of the three-judge panel and only look to see if the panel abused its discretion by "(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Fisher v. Hargett*, 604 S.W.3d 381, 395 (Tenn. 2020) (quoting *Harmon*, 594 S.W.3d at 305–06). Here, the three-judge panel did not err. The panel applied the correct legal standard, reached a reasonable decision, and based its decision on a proper assessment of the evidence.

In determining whether to issue a temporary injunction, the three-judge panel applied the correct legal standard and considered these four factors:

(1)    the threat of irreparable harm to the plaintiffs if the injunction was not granted;
(2)    the balance between this harm and injury that granting the injunction would inflict on the defendants;
(3)    the probability that the plaintiffs will succeed on the merits; and
(4)    the public interest.

*Fisher*, 604 S.W.3d at 394.

The three-judge panel found all four factors weighed in the plaintiffs' favor. The defendants do not challenge the panel's finding on factors (1) a threat of irreparable harm to the plaintiffs if the injunction was not granted and (3) the probability that the plaintiffs will succeed on the merits. Instead, the defendants challenge the three-judge panel's findings only on factors (2) the balance between the harm to the plaintiffs and the injury that granting the injunction would inflict on the defendants and (4) the public interest. Yet the three-judge panel balanced the harm to the plaintiffs and the injury that granting the injunction would inflict on the defendants, as well as the public interest, and arrived at a reasonable result.

The defendants presented affidavits from the Assistant Coordinator of Elections for the State of Tennessee and the Administrators of Elections for Wilson County, Knox County, and Shelby County. These affidavits generally state that if the panel extended the candidate qualifying deadline from April 7 to May 20 (forty-three days), as proposed by the plaintiffs, it would be impossible or very difficult for them to meet the June 20, 2022 deadline for mailing uniformed and overseas absentee ballots for the August 4, 2022 election. Based on this evidence, the panel *rejected* the plaintiffs' proposed May 20 qualifying deadline extension. Instead, the panel, after considering the defendant's proof, ordered a short extension of the qualifying deadline only to May 5. In doing so, the panel complied with the law, considered the harm to the plaintiffs caused by an unconstitutional senatorial redistricting plan and the injury to the defendants, and ordered a brief extension of the candidate qualifying deadline to allow for the constitutional defect to be remedied. The panel carefully tailored a remedy minimizing the harm to the defendants and allowing for an orderly election.

In presenting their evidence, the defendants took a calculated risk by focusing solely on the hardship and impossibility of conducting the August 2022 election if the candidate qualifying deadline was extended to May 20 as proposed by the plaintiffs.[2] The defendants *only* defended against the plaintiffs' proposed May 20 qualifying deadline and failed to consider any other alternative—such as that the three-judge panel might consider a shorter extension. The defendants' affidavits do not show that *any* delay beyond April 7 would cause harm.[3]

---

[2] Here, time is of the essence given election deadlines. Yet the defendants opposed the plaintiffs' motion to set an expedited briefing schedule and hearing for summary judgment, arguing that the plaintiffs could not move for summary judgment until April 1, that summary judgment was "impracticable at this time," and—notably—"postponement of the qualifying deadline . . . is not presently before the panel." Despite the urgency of the impending election deadlines, defendants filed no dispositive motions of their own.

[3] Beth Henry Robertson, Assistant Coordinator of Elections for the State of Tennessee, like the other election officials, focused her affidavit on the May 20 deadline. In a single paragraph of the 11-page affidavit, she stated that "[i]f the April 7 candidate qualifying deadline were moved to May 20 (*or any other date later in the election cycle*), we would not be able to comply with the MOVE and it would be very difficult for us to have everything timely and accurately ready for the August election and early voting." (Emphasis added). This statement is ambiguous—it could mean either any other day later *than April 7* or any other day later *than May 20*. If it means the latter, then the statement is supported by the rest of the affidavit's specific claims. If, however, the statement means that any delay past April 7 would make compliance impossible, it is conclusory and unsupported by any other specific statement about the timeline within the affidavit. Either way, the statement does not establish that the three-judge panel abused its discretion by moving the deadline to May 5.

Affiant Linda Phillips, Administrator of Elections for Shelby County, stated that the plaintiff's proposed qualification deadline would not provide enough time to meet a May 20 scheduling deadline to

The defendants' "all or nothing" strategy left the three-judge panel with no choice but to create its own timeline and settle on a date that would minimize or eliminate harm to the defendants and the election process. This is what the panel did by ordering a much shorter qualifying deadline extension to May 5. Even though the plaintiffs' challenge is to the non-consecutive numbered Senatorial districts in Davidson County, notably the defendants presented no evidence from the Davidson County Election Commission that it could not meet the election deadlines based on a May 5 or May 20 qualifying deadline.

Based on the affidavits from the four election officials submitted by the defendants, the August ballots cannot be finalized until fourteen days after the qualifying deadline. The candidates have seven days to withdraw.[4] During that same seven-day window, the executive committees of the political parties may challenge certain candidates' inclusion on the ballot because they are not bona fide members of the party—and those candidates have another seven days to appeal their exclusion.[5] Then the ballots can be printed once they are approved by the local election commission and the State Coordinator of Elections. In their affidavits, the election officials stated that they would need some time to build and test the ballots after the fourteen-day appeal deadline. The officials stated that it would take up to another week to prepare and mail the ballots to overseas and military absentee voters after they are printed and that under federal law,[6] they must mail these ballots forty-five days before an election. For the August election, this forty-five-day deadline is June 20. In their affidavits, the officials stated that under the plaintiffs' proposed May 20 qualifying deadline, they could not begin to work on the ballots until June 3, which would only give them seventeen days to construct, print, and mail the ballots—a task they said was impossible. But the qualifying deadline imposed by the three-judge panel, May 5, gave the election officials thirty-two days—almost twice the time—to carry out their duties.

By extending the deadline only to May 5, the three-judge panel gave election officials sufficient time to prepare, print, and send the ballots. Nothing in the record shows that state and local election officials will find it impossible to comply with election deadlines or that chaos will ensue based on a May 5 qualifying deadline.

get on the agenda for a Shelby County Commission meeting on June 6, the last opportunity to receive additional printing funding before June 20. That timeline makes sense if Ms. Phillips would be unable to finalize the list of candidates until June 3, fourteen days after the plaintiff's proposed deadline, and if additional funding is even necessary. But under the May 5 qualifying deadline imposed by the three-judge panel, the list of candidates would become final on May 19—just in time to submit a purchase request based on provisional bids for the June 6 meeting. No other affiant provided a specific timeline to explain why a May 5 qualifying deadline would make it impossible to fulfill their duties as election administrators.

[4] Tenn. Code Ann. § 2-5-204(b)(1) (2014 & Supp. 2021).

[5] *See* Tenn. Code Ann. § 2-5-204(b)(2).

[6] *See* 52 U.S.C. § 20302(a)(8).

In short, we should not speculate that a May 5 qualifying deadline imposes the same hardship that a May 20 qualifying deadline would have imposed. Our review of the "factual basis" for a decision is limited to reviewing "the evidence in the record." *Harmon*, 594 S.W.3d at 306 (quoting *Lee Med. Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). To find an abuse of discretion based on an "assessment of the evidence," we must conclude that a trial court's assessment is clearly erroneous. *Lee Med.*, 312 S.W.3d at 524; *see also Hussey v. Woods*, 538 S.W.3d 476, 487 (Tenn. 2017) (looking to "the facts presented" to conclude the trial court did not abuse its discretion because it "did not apply an incorrect legal standard, reach an illogical result, commit clear error in its assessment of the evidence, or rely on flawed reasoning"). Reasonable minds may disagree about whether an inference can be drawn from testimony about May 20 to a conclusion about May 5. Because the three-judge panel's determination was within the permissible range of acceptable alternative rulings, *Harmon*, 594 S.W.3d at 307, the three-judge panel did not abuse its discretion.

To be sure, the State's interest in preserving integrity of the election process is important. But the three-judge panel did not abuse its discretion by considering other factors or failing to give this consideration decisive weight. The Supreme Court of the United States has cited the "*Purcell* principle" for the proposition that "*lower federal* courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (emphasis added). But we are not a lower federal court. State courts and courts of last resort have a vital role to play in protecting the right to vote and the structural guarantees of a constitutional democracy. *See Wisconsin Legislature v. Wisconsin Elections Comm'n*, No. 21A471, 2022 WL 851720 (U.S. Mar. 23, 2022) (reversing the Wisconsin Supreme Court's redistricting order and remanding to cure a possibly unconstitutional racial gerrymander four and a half months before the primary).

Recently, the North Carolina Supreme Court struck down a redistricting plan a short time before an election because it violated the state constitution. *Harper v. Hall*, 868 S.E.2d 499, 511 (N.C. Feb. 14, 2022), *petition for cert. filed* (U.S. Mar. 21, 2022) (No. 21-1271). In its February 4, 2022 order, the North Carolina Supreme Court ordered new maps to be drawn in compliance with the state constitution by February 23, in time for a May 17, 2022 primary. *Harper v. Hall*, 867 S.E.2d 554, 558 (N.C. Feb. 4, 2022); *see also League of Women Voters v. Commonwealth*, 178 A.3d 737, 741 (Pa. 2018) (striking down a redistricting plan as violating the state constitution in February of an election year).

Supreme Courts in other states have also struck down redistricting plans exercising original jurisdiction during election years. *See Adams v. DeWine*, Nos. 2021-1428 & 2021-1449, 2022 WL 129092 (Ohio Jan. 14, 2022) (invalidating redistricting plan as violating partisan gerrymandering and county-splitting provision of Ohio Constitution); *In re Senate Joint Res. of Legis. Apportionment 1176*, 83 So. 3d 597, 686 (Fla. 2012)

(enjoining the use of an invalid redistricting plan in March 2012 under the state constitution).

The Court cites a Georgia federal district court opinion that determined that the balance of the equities weighed against enjoining a redistricting plan even where plaintiffs were likely to succeed on the merits. *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, No. 1:21-CV-5337-SCJ, 2022 WL 633312 (N.D. Ga. Feb. 28, 2022). But there, the defendants had provided extensive and detailed evidence from which the court concluded that there was "insufficient time to effectuate remedial relief" so that the 2022 election could go forward. *Id.* at *76. Here, as set forth above, the defendants have not provided adequate evidence that the remedy fashioned by the three-judge panel makes it impossible for them to fulfill their duties with regard to the 2022 election. The authority cited by the Court shows that reasonable minds will disagree in hard cases about how to balance the equities. It does not show that the three-judge panel's conclusion was unreasonable or outside the range of permissible legal determinations.

In sum, the three-judge panel's decision should be affirmed. The panel applied the correct legal standard, reached a reasonable decision, and based its decision on a proper assessment of the evidence.

SHARON G. LEE, JUSTICE