REVISED FEBRUARY 23, 2010

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

February 4, 2010

Charles R. Fulbruge III
Clerk

No. 08-11006

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

DARREN L REAGAN

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, BARKSDALE, and ELROD, Circuit Judges.

KING, Circuit Judge:

Defendant–appellant Darren L. Reagan was charged with five counts of theft of public money in violation of 18 U.S.C. § 641. A jury convicted on all five counts. The district court sentenced Reagan to 12 months of imprisonment on each count, to be served concurrently, and two years of supervised release; imposed a $100 special assessment for each count; and ordered restitution. Reagan timely appealed his conviction and sentence. For the following reasons, we affirm.

## I. Factual and Procedural Background

Reagan was charged under 18 U.S.C. § 641 for improperly receiving $41,832 over five years in Section 8 program payments from the Dallas Housing Authority (DHA), which administers funding provided by the Department of Housing and Urban Development (HUD). The Section 8 program subsidizes rent for low income persons. Reagan jointly owned a residential property with his wife, Debra Kirvin, and, in 2002, leased this property to his wife's mother, Leatha Kervin,[1] a participant in the Section 8 program. One of the documents that Reagan signed and filed with the DHA to initiate Section 8 benefits included the disclaimer that "the owner (including a principal or other interested party) is not the parent, child, grandparent, sister, or brother of any member of the family." In another document signed and filed with the DHA, Reagan similarly promised that he had "no blood, marital or other familial relationship" with the Section 8 recipient. Reagan received monthly checks from the DHA from March 2002 until September 2007, when his relationship to Leatha Kervin was discovered. Reagan was charged under § 641 with five counts of receipt of public funds, one count for each year that he received monthly Section 8 payments.

Before trial, Reagan filed a motion to limit or dismiss the indictment, arguing that the five-count charge under § 641 was multiplicitous; that § 641 was not the appropriate statute under which to charge HUD fraud; and that the indictment was unconstitutionally vague. The district court denied the motion. At trial, Reagan requested cautionary instructions regarding his wife's

---

[1] Debra Kirvin spells her last name "Kirvin," while her mother uses alternate spellings including "Kirvin," "Kervin," and "Kirven."

testimony. The district court refused to give the proposed instructions. Reagan now appeals the denial of the motion to dismiss and the denial of the requested instructions.

## II. The Multiplicity Challenge

Reagan asserts that the indictment was multiplicitous because although it charged five separate offenses, all "stem[med] from a single fraudulent ac[t] in the first year." The Government counters that each time Reagan received a housing assistance payment he violated § 641, so multiple counts were appropriate. The Government contends that the indictment's infirmity, if any, was that it was duplicitous for joining multiple offenses in each count. See United States v. Miller, 520 F.3d 504, 512 (5th Cir. 2008) ("Duplicity occurs when a single count in an indictment contains two or more distinct offenses. Even if an indictment is duplicitous, a defendant must be prejudiced to receive relief[.]"). Reagan did not raise a duplicity challenge before the district court and does not raise one on appeal. Accordingly, we do not consider whether the sentence was duplicitous.

Although Reagan was sentenced to concurrent terms of imprisonment, the district court imposed a $100 special assessment for each count under 18 U.S.C. § 3013(a). Accordingly, Reagan's multiplicity challenge is still viable. See United States v. Soape, 169 F.3d 257, 266 n.4 (5th Cir. 1999) ("While the district court sentenced Soape to concurrent . . . terms of imprisonment . . . it also imposed a $50 special assessment for each count. Soape's monetary sanctions therefore depend on the validity of each count, including the allegedly multiplicitous ones, and the concurrent sentence doctrine does not apply.").

"Multiplicity claims are reviewed de novo." United States v. Planck, 493 F.3d 501, 503 (5th Cir. 2007). "An indictment is multiplicitous if it charges a single offense in multiple counts, thus raising the potential for multiple punishment for the same offense, implicating the [F]ifth [A]mendment double jeopardy clause." United States v. Brechtel, 997 F.2d 1108, 1112 (5th Cir. 1993) (footnotes omitted). To determine "whether separate and distinct prohibited acts, made punishable by law, have been committed," the court looks to the "allowable unit of prosecution," starting with the language of the statute. Planck, 493 F.3d at 503 (internal quotation marks and citations omitted); United States v. Reedy, 304 F.3d 358, 365 (5th Cir. 2002).

Section 641 penalizes "[w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another . . . any record, voucher, money, or thing of value of the United States." 18 U.S.C. § 641. No case has been reported discussing the "allowable unit of prosecution" under § 641. Courts interpreting similarly-worded statutes, however, have concluded that each distinct taking of funds constitutes a separate violation under the statute.

In United States v. Brechtel, 997 F.2d at 1111, for example, the defendant was convicted of two counts of violating 18 U.S.C. § 1006 after issuing two improper loans in the course of a single real estate transaction. Section 1006 punishes bank officials who "receive[ ] . . . any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of . . . [the] institution." 18 U.S.C. § 1006. We rejected the defendant's contention that the counts were multiplicitous, reasoning that the plain language of § 1006 penalizes the "receipt of improper benefit from individual transactions, rather than from overarching schemes." Brechtel, 997 F.2d at

4

1112. We distinguished the language of § 1006 from that of 18 U.S.C. § 1344, which punishes "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice . . . to defraud a financial institution" (emphases added), and under which we have found the "allowable unit of prosecution" to be the overarching scheme, not individual steps in furtherance of that scheme. See United States v. Lemons, 941 F.2d 309, 317–18 (5th Cir. 1991). We concluded that, by contrast, the language of § 1006, which punishes the receipt of "any money . . . through any transaction," makes clear that a defendant "violate[s] § 1006 each time he benefit[s] from an extension of credit." Brechtel, 997 F.2d at 1112.

The Sixth Circuit reached a similar conclusion as to a similarly-worded statute in United States v. Busacca, 936 F.2d 232, 234, 239 (6th Cir. 1991). The defendant was accused of embezzling from an employee benefit plan, for which he was a fiduciary, in order to pay his legal defense fees in an action relating to his operation of the plan. He was convicted of six counts of embezzlement under 18 U.S.C. § 664, one for each employee benefit plan check that he caused to be issued to himself. Busacca, 936 F.2d at 235–36. Section 664 penalizes "[a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, . . . or other assets of any employee welfare benefit plan or employee pension benefit plan." 18 U.S.C. § 664. The defendant contended that the charges were multiplicitous because the issuance of each check was merely part of a single scheme of embezzlement. Busacca, 936 F.2d at 239. The Sixth Circuit rejected this argument, accepting the government's argument that "the use of the phrase 'any moneys' indicates the intent of Congress that each taking of funds from an employee benefit plan constitutes a separate violation of the statute." Id. The

court concluded that each time the defendant caused a check to be issued to himself, he violated the statute.  Id.

Like the statutes discussed in Brechtel and Busacca, § 641 punishes "[w]hoever embezzles, steals, purloins or knowingly converts to his use . . . any record, voucher, money, or thing of value of the United States."  18 U.S.C. § 641 (emphasis added).  Accordingly, we hold that the "allowable unit of prosecution" under § 641 is each individual transaction in which government money is received, even if the transaction is part of an overarching scheme.  Reagan violated § 641 each time he converted a HUD check.  The five counts against Reagan therefore were not multiplicitous.

## III.   The Remaining Bases for Relief

Reagan asserts that the district court erred in refusing to grant his motion to dismiss the indictment.  He contends that the indictment improperly charged him under § 641 rather than under the HUD fraud statute, 18 U.S.C. § 1012, and failed to set out the charges against him in a "plain and intelligible manner." Reagan, who is represented by appointed counsel, does nothing beyond listing these points of error—he offers no further arguments or explanation.  This is a failure to brief and constitutes waiver.  See United States v. Stalnaker, 571 F.3d 428, 439–440 (5th Cir. 2009) (holding that the defendant's failure to explain her assertions or provide citations to the record or relevant law constituted waiver for failure to adequately brief); see also FED. R. APP. P. 28(a)(9)(A) ("The appellant's brief must contain . . . [the] appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.").  We therefore do not address these points of error.

For similar reasons, we do not address Reagan's contention that the district court abused its discretion by failing to give the jury cautionary instructions about the testimony of his wife, Debra Kirvin.[2] The party challenging the denial of requested jury instructions must show that "there [wa]s sufficient evidentiary foundation for . . . [the] requested instruction[s]," viewing the evidence in the light most favorable to him. United States v. Giraldi, 86 F.3d 1368, 1376 (5th Cir. 1996). The party must then show that the district court abused its discretion in denying the requested instructions because those instructions were substantively correct, not covered in the charge given to the jury, and their omission seriously impaired his ability to present his defense. Id. Reagan does not provide citations to any evidence in the record to support his claim. By failing to do so, Reagan has failed to show a "sufficient evidentiary foundation" for the requested instruction and therefore cannot establish abuse of discretion. This is also a failure to brief. See United States v. Delgado–Martinez, 564 F.3d 750, 752 (5th Cir. 2009) ("Delgado–Martinez's briefing is devoid of any citations to the record in support of his allegations. Accordingly, we do not consider [this] issue on appeal." (citation omitted)); FED. R. APP. P. 28(a)(9)(A). We therefore do not address Reagan's contentions as to jury instructions.

---

[2] Reagan's proposed instructions would have instructed the jury that Kirvin was an accomplice and could have been charged for the same crime, and that these facts could provide bases to find her testimony less credible. Reagan contends, without providing any citations to the record, that these proposed instructions were necessary because "this case is replete with evidence that [he and Kirvin] were at one another's throats at the time of the trial," and that "[t]heir marriage was in the process of dissolution and the bitterness between them was palpable." Reagan argues that "[t]he law favors cautioning jurors under such circumstances to take the testimony of the hostile, accomplice witness with a grain of salt," but offers no further legal analysis.

## IV.   Conclusion

Accordingly, we AFFIRM the conviction and sentence.