# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 6, 2010

Lyle W. Cayce
Clerk

No. 09-10905

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ROY DAVID WILLIAMS,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:09-CR-33-1

Before DAVIS, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

A jury found Roy David Williams guilty on 29 counts stemming from a scheme to defraud the Department of Energy by overbilling one of its contractors, B & W Pantex (Pantex), for work performed by Williams's company, WAATTS, Inc. (WAATTS), at a nuclear facility operated by Pantex and funded by the Department of Energy. Specifically, Williams was convicted of wire fraud, producing false invoices billing Pantex for unjustified per diems with the purpose of defrauding the United States, presenting false time sheets to a

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

United States agency, and receiving public money knowing it was obtained by fraud. He was sentenced to a total of 30 months of imprisonment, to be followed by a total of 5 years of supervised release, and ordered to pay $168,848 in restitution.

Williams's defense in the district court, and his primary contention on appeal, was that the three contracts between Pantex and WAATTS were "fixed-price" contracts, which he argued meant that WAATTS was entitled to receive progress payments based on the percent of the projects WAATTS had completed and, once the work was complete, it was entitled to the full amount of the contract price. Thus, in Williams's view, even if he provided Pantex with false invoices and time sheets, he was not guilty because he received only what he was entitled to under the contracts.

Williams first argues, as he did in the district court, that the dispute in this case amounts to a disagreement between WAATTS and Pantex over the terms of their contracts, that the contracts were not federal procurement contracts, and thus that the federal courts lack jurisdiction. However, the Government did not allege that Williams is liable to it under a theory of contract law. Rather, this is a criminal proceeding alleging violations of federal criminal statutes. Federal district courts have jurisdiction over all cases in which a defendant is charged with a federal offense. 18 U.S.C. § 3231; *United States v. Clark*, 577 F.3d 273, 281 (5th Cir.), *cert denied*, 130 S. Ct. 809 (2009). To the extent that Williams argues that the indictment was insufficient because it did not allege that WAATTS had a contract with the government, he still cannot succeed because the existence of a government contract is not an element of any of the offenses that he was charged with. *See* 18 U.S.C. §§ 287, 494, 641, 1343.

Williams also challenges the district court's failure to grant his request to instruct the jury that the contracts were fixed-price contracts and its decision to allow a Pantex employee to testify as to the contracts' meaning, contending that construction of the unambiguous contracts was a question of law for the judge

to determine. As for the jury instruction, Williams must show that there was a sufficient evidentiary foundation for his proposed instruction and that the district court abused its discretion in refusing to give it. *See United States v. Reagan*, 596 F.3d 251, 255 (5th Cir. 2010). Williams cannot prevail, however, because he cannot surmount the first hurdle by showing that the contracts were fixed-price contracts. Williams contends that the Federal Acquisition Regulations, laid out in the Code of Federal Regulations, apply to the contracts between Pantex and WAATTS and require that all government contracts "must fall withing two mandated categories"—fixed-price contracts or cost-reimbursement contracts. *See* 48 C.F.R. §§ 16.101(b), 16.201. However, he simply presumes that the contracts are governed by the Federal Acquisition Regulations without presenting any evidence that the contracts are government acquisition contracts. To the contrary, all of the evidence supports the opposite conclusion. The United States is not a party to the contracts. *Cf.* 48 C.F.R. §§ 1.104, 2.101 (defining an acquisition that is subject to the federal rules and as a contract for supplies and services "by and for the use of the Federal Government"). Indeed, Pantex's Procurement Manuel explains that "Pantex's procurements are not Federal procurements, and are not directly subject to the Federal Acquisition Regulations (FAR) in 48 CFR." Furthermore, the contracts and the documents incorporated into the contracts establish that Pantex was not required to pay periodic progress payments based on the percentage of the project WAATTS completed nor was it was obligated to pay the entire contract price regardless of the amount of time WAATTS employees worked. To the contrary, Pantex and WAATTS specifically agreed that WAATTS would be paid only for the time that its employees actually worked on the projects.

As for the challenged testimony, Williams argues that, though the witness was called to provide fact testimony, her testimony regarding the nature of the contract amounted to impermissible expert testimony about an issue of law—the proper construction of a contract. Williams objected to the testimony at trial;

3

thus, we review the district court's decision to allow it for abuse of discretion. *United States v. McMillan*, 600 F.3d 434, 456 (5th Cir. 2010). The testimony was admissible. As a lay witness, the Pantex employee was permitted to provide opinions based on her personal knowledge, though she was not permitted to opine on subjects that required technical or specialized knowledge. *See* FED. R. EVID. 701, 702; *McMillan*, 600 F.3d at 456. She testified that she was responsible for managing the contracts with WAATTS and so she had personal knowledge of each party's responsibilities under them. In describing the contracts and invoicing procedures, she provided no expert opinion that required specialized knowledge of contract law. She merely explained how the parties operated under the contract and testified that the contracts were target-price contracts (and not fixed-price contracts) based on her knowledge of the contracts as the contract manager and her observation of the parties' performance. *Cf. United States v. Riddle*, 103 F.3d 423, 428-29 (5th Cir. 1997) (explaining that a lay witnesses may express opinions that required specialized knowledge where the testimony was based on personal experience). Moreover, her testimony that the contracts were target-price contracts that required Pantex to pay only for the amount of time WAATTS employees spent working on the projects was consistent with conclusions that an ordinary person could draw from reviewing the contracts and the documents incorporated into them. *See United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008).

Finally, Williams advances three arguments that amount to challenges to the sufficiency of the evidence used to convict him. After trial, Williams filed a timely motion for acquittal based in part on his argument that the evidence was insufficient to support his conviction. *See* Fed. R. Crim. P. 29(c). In the alternative, he requested a new trial. The district court denied the motion. *Id.* at 848-57. Williams, thus, has preserved his sufficiency-of-the-evidence challenge for appellate review. *See United States v. Villareal*, 324 F.3d 319, 322 (5th Cir. 2003). Accordingly, we review the issue de novo, viewing the evidence

and drawing all reasonable inferences in the light most favorable to the verdict, to determine whether a rational trier of fact could have found Williams guilty. *See United States v. Ollison*, 555 F.3d 152, 158 (5th Cir. 2009). We review the decision to deny a new trial for abuse of discretion. *See United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005).

Williams contends that the evidence was insufficient to convict him of the charges stemming from his submission of false time sheets and invoices, asserting that he received no more that he was entitled to under the terms of the contracts and thus that any false statements he made were immaterial. Williams's argument fails because witness testimony and documentary evidence established that the contracts were target-price contracts under which WAATTS was to be paid for the amount of time its employees worked plus allowable per diems and was not entitled to payment of the contract price absent proper invoices that this amount had been earned. Thus, the evidence was sufficient for the jury to conclude that in claiming unjustified per diems, Williams presented false claims for payment, and in altering time sheets, he falsified writings for the purposes of defrauding the United States.

Next, Williams argues that the Government failed to link the evidence to the particular counts related to two of the contracts, but he is wrong. For each count, the Government listed on the indictment the date of the offense and the relevant invoice number, and at trial it offered into evidence the invoices and proof that Pantex paid them. For each charge related to the per diems, the Government submitted evidence that the relevant invoices contained charges for unjustified per diems, and for each charge related to the forged time sheets, the Government submitted evidence that Williams had altered employee time sheets that corresponded to each invoice or billed for his own time when he was not working on authorized projects. Moreover, a criminal investigator and special agent from Department of Energy and a Pantex employee testified regarding each of the invoices, explaining why each was fraudulent.

Finally, Williams argues that the evidence was insufficient to support the jury's finding relating to the amount of the loss, because, in his view, the Government failed to prove that one of WAATTS's employees, Mark Armstrong, was not entitled to per diems. WAATTS employees who lived more than 45 miles away from the Pantex facility were entitled receive a per diem from Pantex for each day they worked at the facility. The facility is within 45 miles of Amarillo, Texas. The evidence established that Armstrong received per diems based on his false representation to Pantex that he lived in Leonard, Texas; the investigation showed that he provided what seems to be his mother-in-law's address. Armstrong testified that he had a home in Amarillo and the Department of Energy investigator confirmed that Armstrong had lived in Amarillo since around 1994. Though Armstrong also testified that he had a house in Georgia, the evidence that Armstrong lied about his address combined with the testimony of the investigator that Armstrong lived in Amarillo was sufficient for the jury to conclude that Armstrong was not entitled to a per diem.

Accordingly, the judgment of the district court is AFFIRMED.