**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 24, 2012

Lyle W. Cayce
Clerk

No. 11-41346

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

OM PRAKASH BUDHA,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:11-CR-396-1

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Om Prakash Budha, a native and citizen of Nepal, appeals from his conviction on four counts of failure or refusal to apply for travel documents, in violation of 8 U.S.C. § 1253(a)(1)(B). We AFFIRM but vacate the convictions on the second, third, and fourth counts of the indictment under the concurrent sentence doctrine.

Border Patrol agents apprehended Budha after he crossed the Rio Grande River into the United States on October 6, 2010. Because Budha did not speak

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-41346

English or Spanish but nodded affirmatively in response to the word "Nepal," the agents interviewed Budha with the assistance of a Nepali interpreter who was present on a speaker phone. After waiving his right to remain silent and the right to appointed counsel, Budha indicated that he was born in Nepal and had crossed the river on an inner tube without inspection. He also indicated that he had no claim to citizenship or documents that would allow him to enter the United States. An asylum officer later conducted a credible fear interview. An immigration judge determined that Budha was not admissible and issued a final order of removal on November 4, 2010.

Immigration officials requested that Budha complete an application for travel documents so that he could be removed to Nepal. They interviewed Budha for this purpose on four occasions with the assistance of an interpreter who was again present on speaker phone. Each time, Budha was informed of his obligation to assist in obtaining the necessary travel documents and of the possibility of criminal penalties for failure to do so. Nevertheless, Budha refused to cooperate. The instant criminal prosecution then commenced, and a jury convicted Budha on four counts of failing or refusing to apply for the travel documents.

In his first issue on appeal, Budha argues that the Government violated the Confrontation Clause by not calling the interpreters as witnesses. In support, he relies on the Supreme Court's decisions in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527 (2009), and *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011). We have held that, except in unusual circumstances, interpreters may be considered language conduits, whose translations of the defendant's own statements are not hearsay and do not implicate defendant's confrontation rights. *See United States v. Cordero*, 18 F.3d 1248, 1252–53 (5th Cir. 1994); *see also United States v. Nazemian*, 948 F.2d 522, 526–27 (9th Cir. 1991). We agree

2

with the Ninth Circuit that the Supreme Court's recent confrontation jurisprudence is not in conflict with that holding. *See United States v. Hieng*, 679 F.3d 1131, 1138–41 (9th Cir. 2012). We conclude from our review of the record that the interpreters here were language conduits and that because Budha may not confront himself, his Confrontation Clause argument is unavailing.

Budha next argues that the district court denied him his constitutional right to testify and to present a defense of duress or justification because the court barred him from testifying about his fear of returning to Nepal, and it also prohibited him from making a proffer. We agree with the Government that the district court had sufficient knowledge of Budha's alleged fear from the pleadings and from the parties' arguments. Budha wished to show that his failure to apply for travel documents was not willful because he had a legitimate fear of death or bodily harm if he returned to Nepal.

The Immigration and Nationality Act required Budha to cooperate and to apply for travel documents in "good faith." 8 U.S.C. § 1253(a)(1)(B). This means that Budha was required to attempt to obtain the documents but could be excused if he was unsuccessful despite his cooperation. Budha knew of this obligation to cooperate and he knew that he faced a criminal penalty for failing to do so. There is no question that Budha willfully refused to complete the application for documents, and the fact that he may have believed he had a good reason for refusing to complete the application was properly excluded as irrelevant. *See United States v. Ashraf*, 628 F.3d 813, 824–25 (6th Cir. 2011); *see also United States v. Adeyinka*, 205 F. App'x 238, 241 (5th Cir. 2006).

Budha also argues that the evidence was insufficient to support his conviction. In order to convict Budha, the Government had to prove that he (1) was an alien subject to "a final order of removal" and (2) "willfully fail[ed] or refuse[d] to make timely application in good faith for travel or other documents

necessary to [his] departure." § 1253(a)(1)(B). Budha argues that the Government cannot show that he acted willfully because it told him that he had the right to remain silent and to the appointment of counsel. Therefore, according to Budha, the Government cannot show that his failure to complete the application was a willful violation of law rather than an exercise of the rights of which the Government informed him. We are unconvinced.

The record shows that Budha was informed of his right to remain silent and to appointed counsel upon his apprehension on October 6, 2010. Budha waived his rights and answered questions. He was subsequently ordered removed in separate immigration proceedings on November 4, 2010. Thereafter, Budha was interviewed on November 18, 2010; December 16, 2010; January 18, 2011; and February 14, 2011. Budha was informed at each interview that he was required to assist in obtaining travel documents and that he faced criminal prosecution for failing to cooperate, but Budha refused to fill out the application. Although Budha asked for an attorney at the December 16, 2010 meeting, he was not entitled to appointed counsel at that point, and the record does not show that Budha was told during any of the interviews after the removal order that he had a right to remain silent or to appointed counsel. A rational jury could find that Budha was subject to a final order of removal and that he was fully informed of his obligations to cooperate but willfully failed or refused to apply for the travel documents necessary for his removal. *See* § 1253(a)(1)(B); *United States v. Jara-Favela*, 686 F.3d 289, 301 (5th Cir. 2012) (holding that on a review of the sufficiency of the evidence the court determines whether any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt).

Next, Budha argues that the Government induced him to run afoul of the law by informing him of the right to remain silent and the right to counsel, and that its prosecution of him in the face of this advisement was outrageous conduct

warranting dismissal of the indictment.  For reasons similar to our rejection of Budha's challenge to the sufficiency of the evidence, we conclude that Budha has failed to meet the "extremely demanding" standard for assessing outrageous Government conduct and that the Government's alleged misconduct here was not "so outrageous that it violates the principle of fundamental fairness under the due process clause of the Fifth Amendment." *United States v. Sandlin*, 589 F.3d 749, 758–59 (5th Cir. 2009) (internal quotation marks and citation omitted).

Finally, Budha argues that the indictment was multiplicitous.  "An indictment is multiplicitous if it charges a single offense in multiple counts, thus raising the potential for multiple punishment for the same offense, implicating the [F]ifth [A]mendment double jeopardy clause." *United States v. Reagan*, 596 F.3d 251, 253 (5th Cir. 2010) (internal quotation marks and citation omitted). When deciding a multiplicity claim, we "look to whether separate and distinct prohibited acts, made punishable by law, have been committed." *United States v. Planck*, 493 F.3d 501, 503 (5th Cir. 2007).  We must determine the "allowable unit of prosecution," which is the "*actus reus* of the defendant."  *Id.*

Budha argues that the allowable unit of prosecution for an offense under § 1253(a)(1)(B) is the failure to make a timely application for travel documents within 90 days of the removal order.  Because Budha's indictment charged him with four refusals to apply for documents, three of which occurred within the 90-day time frame, he contends that the indictment was multiplicitous.  Budha asks that we reverse the district court's judgment and remand for dismissal of three counts of the indictment and entry of an amended judgment on only one count. We conclude that we need not decide whether counts two, three, and four of the indictment were multiplicitous of count one because of the concurrent sentence doctrine.[1]

---

[1] Budha concedes in his brief that any of the dates alleged in the four counts of the indictment would have been sufficient to support a single-count of conviction because the

No. 11-41346

The concurrent sentence doctrine is "a tool of judicial economy." *United States v. Soape*, 169 F.3d 257, 266 n.4 (5th Cir. 1999). "Under this doctrine the existence of one valid conviction makes unnecessary the review of other convictions which run concurrently with the valid conviction." *United States v. Stovall*, 825 F.2d 817, 824 (5th Cir. 1987). "We apply the concurrent sentence doctrine in a manner that removes the adverse collateral consequences of the sentence from the defendant. Accordingly, we have adopted the policy of vacating the unreviewed sentence and suspending imposition of that sentence." *Id.*

Here, the district court sentenced Budha to 224 days in prison and one year of supervised release on counts one, two, three, and four, with all sentences to run concurrently. We therefore affirm Budha's conviction on count one but vacate the unreviewed convictions on counts two, three, and four of the indictment and suspend the imposition of those sentences. *See United States v. Harrelson*, 754 F.2d 1182, 1185 (5th Cir. 1985) ("We need not decide whether the fifth count charges the same offense as either of the other counts, because the sentence for the fifth count was imposed to run concurrently with the third count. We therefore vacate the unreviewed conviction under the fifth count and suspend imposition of that sentence."); *United States v. Montemayor*, 703 F.2d 109, 116 (5th Cir. 1983).[2]

---

Government alleged that the offense occurred "on or about" the alleged dates. We therefore construe his argument to be that counts two, three, and four were multiplicitous of count one.

[2] The district court also imposed a special assessment of $400, or $100 for each count, which ordinarily would preclude application of the concurrent sentence doctrine because the monetary sanctions depend on the validity of each count. *See Reagan*, 596 F.3d at 253; *see also Ray v. United States*, 481 U.S. 736, 737, 107 S. Ct. 2093, 2094 (1987). Because the district court remitted the special assessment, however, Budha has suffered no collateral consequences from the unreviewed sentences, and we conclude that the concurrent sentence doctrine is thus applicable. *Cf. Stovall*, 825 F.2d at 824 (applying concurrent sentence doctrine where the district court did not impose the special assessments against the defendant on any of the counts for which the defendant was convicted).

No. 11-41346

AFFIRMED IN PART; VACATED IN PART.