# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 30, 2020

Lyle W. Cayce
Clerk

No. 20-40643

Texas Alliance for Retired Americans; Sylvia Bruni; DSCC; DCCC,

*Plaintiffs—Appellees*,

*versus*

Ruth Hughs, *in her official capacity as the* Texas Secretary of State,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:20-CV-128

Before Clement, Elrod, and Haynes, *Circuit Judges*.

Per Curiam:

Early voting in Texas begins on October 13.  On September 25—just eighteen days before early voting begins—the district court enjoined enforcement of Texas House Bill 25 (HB 25), which eliminates straight-ticket voting.

Applying the factors for ruling on a stay and observing the Supreme Court's repeated emphasis that courts should not alter election rules on the

eve of an election, we STAY the district court's preliminary injunction pending appeal.

## I.

HB 25 was signed into law on June 1, 2017, and its elimination of straight-ticket voting became effective on September 1, 2020. On March 5, 2020, Plaintiffs Bruni, DSCC, DCC, along with the Texas Democratic Party (TDP) and Jessica Tiedt, a candidate for the Texas State House of Representatives, filed their original lawsuit challenging HB 25 as unconstitutional and in violation of the Voting Rights Act. The district court dismissed the suit for lack of standing on June 24, 2020, and Plaintiffs did not file an appeal. Fifty days passed. Then, on August 12, 2020, Plaintiffs dropped Tiedt and TDP as parties, added the Texas Alliance for Retired Americans, and filed a new lawsuit alleging the same claims. Based on the parties' briefs, the district court entered its order enjoining enforcement of HB 25. The district court ordered the Texas Secretary of State (the Secretary) to implement the laws that were in force before HB 25 was enacted in 2017 in time for the upcoming election.

In granting the preliminary injunction, the district court held that the plaintiffs were likely to succeed on the merits for their claim that HB 25 places an undue burden on Texans' right to vote and their right to associate under the First and Fourteenth Amendments to the United States Constitution.

On September 28, 2020, the Secretary filed an emergency motion for stay pending appeal.

## II.

A stay pending appeal "simply suspend[s] judicial alteration of the status quo," so as to allow appellate courts to bring "considered judgment"

to the matter before them and "responsibly fulfill their role in the judicial process." *Nken v. Holder*, 556 U.S. 418, 427, 429 (2009) (internal quotation marks omitted). We consider four factors in deciding a motion to stay pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (quoting *Nken*, 556 U.S. at 426). "The first two factors . . . are the most critical." *Nken*, 556 U.S. at 434. "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

## III.

The Supreme Court has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, --- U.S. ---, 140 S. Ct. 1205, 1207 (2020). Most recently, in *Republican National Committee*, the Court granted an application for stay of a district court's preliminary injunction to the extent that it changed election rules five days before an election because "[b]y changing the election rules so close to the election date . . . the District Court contravened this Court's precedents and erred by ordering such relief." *Id.* Time and time again over the past several years, the Supreme Court has stayed lower court orders that change election rules on the eve of an election. *See, e.g.*, *North Carolina v. League of Women Voters of N.C.*, 574 U.S. 927 (2014) (staying a lower court order that changed election laws thirty-three days before the election); *Husted v. Ohio State Conference of N.A.A.C.P.*, 573 U.S. 988 (2014) (staying a lower court order that changed election laws sixty days before the election); *Veasey v. Perry*, 574

U.S. ---, 135 S. Ct. 9 (2014) (denying application to vacate Court of Appeals' stay of district court injunction that changed election laws on eve of election); *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (staying a lower court order changing election laws twenty-nine days before the election).

The principle from these cases is clear: court changes of election laws close in time to the election are strongly disfavored. Bearing this principle in mind, our court previously has stayed orders changing election laws when an election is imminent. *See, e.g.*, *Tex. Dem. Party v. Abbott*, 961 F.3d 389, 411–12 (5th Cir. 2020); *Veasey*, 769 F.3d at 894. Today too, in staying a preliminary injunction that would change election laws eighteen days before early voting begins, we recognize the value of preserving the status quo in a voting case on the eve of an election, and we find that the traditional factors for granting a stay favor granting one here.

## A.

The Secretary's arguments as to standing,[1] sovereign immunity, and the merits of Plaintiffs' claims are harder to decide on our necessarily

---

[1] Although this remains a question for the panel that decides the merits of the appeal, we have some concerns about whether Plaintiffs have standing. To establish Article III standing, plaintiffs must satisfy the well-known requirements of *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (requiring plaintiffs to demonstrate that they have suffered an "injury in fact" that is "fairly traceable" to the defendant's actions and will "likely . . . be redressed by a favorable decision."). Yet, the district court's analysis of standing rests on shaky factual and legal ground. *First*, the district court displays a fundamental misunderstanding of the way straight-ticket voting worked in Texas prior to HB 25 going into effect. Both the Plaintiffs' expert and the district court seem to have mistakenly assumed that a one-punch straight-ticket voting option enabled voters to "mark a single bubble," that eliminating that option would force voters "to make individual selections," and that therefore, "the amount of time it will take to complete a ballot [without straight-ticket voting] will increase."

As the Secretary argued in the district court and here on appeal, and as any Texan who voted in previous elections knows, this is not how straight-ticket voting in Texas worked. The straight-ticket option still required in-person voters to scroll through the

No. 20-40643

expedited review, but we need not reach them because the Secretary has made a strong showing that she is likely to succeed on the merits of her appeal on the argument that the district court improperly interfered with state election laws on the eve of an election. The Secretary argues that even if the district court had jurisdiction to issue its injunction, the injunction openly defies the Supreme Court's instruction, discussed above, not to interfere with state election laws on the eve of an election.

In its order, the district court contends that *Republican National Committee* is distinguishable. 140 S. Ct. at 1207. The district court reasons that its injunction "would be issued far earlier, would not extend any deadlines, and would not create the sort of confusion *Republican National Commission* [sic] frowns upon."

---

entire ballot, page by page, at the voting machine in order to cast their ballot. This gave voters the opportunity to confirm each of their individual choices or change the selection for any of the individual contests. This fact presents a difficulty for Plaintiffs to establish redressability, an element of standing.

*Second*, the district court mistakenly applies the minimal showing of standing that a plaintiff must show to overcome a motion to dismiss, rather than the "clear showing" of standing required to maintain a preliminary injunction. *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (citing *Winter v. Nat. Res. Def. Counc., Inc.*, 555 U.S. 7, 22 (2008)). A merits panel will need to address standing before reaching the merits because standing is jurisdictional. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998). But we do not need to decide the issue of standing here as a prerequisite to addressing the Secretary's stay request, even if the district court lacked jurisdiction to issue the injunction for which Appellants seek a stay. *See, e.g.*, *I.N.S. v. Legalization Assistance Project of L.A. Cty. Fed. of Labor*, 510 U.S. 1301, 1305–06 (1993) (O'Connor, Circuit Justice, in chambers) (granting application to stay district court order pending final disposition by the Court of Appeals because the plaintiff likely lacked standing); *El Paso Cty. v. Trump*, No. 19-51144, slip op. at 2 (5th Cir. Jan. 8, 2020) (granting stay pending appeal of district court's injunction for, among other reasons, the substantial likelihood that the appellees lacked Article III standing); *see also Tex. Dem. Party v. Abbott*, 961 F.3d 389, 399 (5th Cir. 2020) (discussing standing in the context of likelihood of success on the merits).

This reasoning is deeply flawed. First, eighteen days before early voting is not "far earlier" than five days before an election, especially considering that the Supreme Court has also stayed a lower court order that changed election laws sixty days ahead of an election. *See League of Women Voters of N.C.*, 574 U.S. at 927. Second, the district court's analysis of the burden on election officials and likelihood of confusion relies on the mistaken premise that the "status quo" of Texas election law prior to its issuance of an injunction was straight-ticket voting. The district court states expressly in its order that "Plaintiffs . . . raise a challenge seeking to maintain the status quo." On this mistaken premise, the district court writes that "the requested injunction would not impose such an onerous burden on election officials and merely allows a century-old practice to remain in place for one more election." The district court repeats this mistake over and over, stating, for instance, that the injunction prevents "eliminating a practice that Texan voters have been accustomed to for 100 years" and enables "[a]dministering in-person voting the same way it has been administered for almost 100 years . . . ."

The district court ignores the fact that in June 2017, a majority of the Texas legislature—composed of officials *elected* by Texan voters to represent them—passed a law that ended the long practice of straight-ticket voting. That law became the new "status quo," and Plaintiffs had plenty of time over the past three years to challenge it. It is the *district court's* eleventh-hour injunction that alters the status quo, not the Texas legislature's 2017 duly enacted law. The fact that the status quo of Texas election law just prior to the district court issued the injunction was to *not* allow straight-ticket voting is demonstrated by the fact that Texas election officials, having had three years to adjust to HB 25, printed and mailed thousands of ballots without a straight-ticket voting option for the upcoming general election.

Because of its mistaken premise, the district court minimizes the difficulty and confusion likely to result from Texas election officials having to implement a new ballot type.  Even if, as Plaintiffs argue, the district court's injunction does not apply to mail-in ballots, the Secretary describes the immense burden entailed in programming voting machines to process multiple ballot types, especially during an election.  As discussed above, "the Supreme Court has instructed that we should carefully guard against judicially altering the status quo on the eve of an election."  *Veasey*, 769 F.3d at 895.  We find the Secretary has shown that she is likely to succeed on the merits that the district court erred in issuing an injunction that altered the status quo of Texas election law this close in time to an election.  Thus, the first factor weighs in favor of issuing a stay.

B.

The Secretary has met the burden of showing irreparable injury absent a stay.  *Nken*, 556 U.S. at 426.  "When the State is seeking to stay a preliminary injunction, it's generally enough to say [that] any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020) (quotation marks and brackets omitted); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws.").  In June 2017, over three years ago, the Texas legislature passed HB 25.  "If the district court judgment is ultimately reversed, the State cannot run the election over again, this time applying" HB 25.  *Veasey*, 769 F.3d at 896.  "[T]he State has a significant interest in ensuring the proper and consistent running of its election machinery . . . ."  *Id.*  The district court's understanding of the nature of the injury that the injunction inflicts on Texas election officials, as discussed above, relies on a mistaken premise

that the status quo of election law in Texas is straight-ticket voting. Given the actual reality, the State's interest is severely hampered by the injunction.

C.

Nor would any harm to Plaintiffs outweigh the other three factors, especially considering the first two factors are the "most critical." *Nken*, 556 U.S. at 434. We have already determined that the most critical factors favor granting a stay. *See Planned Parenthood*, 734. F.3d at 419 ("While we acknowledge that Planned Parenthood has also made a strong showing that their interests would be harmed by staying the injunction, given the State's likely success on the merits, this is not enough, standing alone, to outweigh the other factors.").

D.

Finally, given that thousands of ballots without straight-ticket voting have already been mailed in accordance with a law that was passed three years ago and the immense difficulty described by the Secretary of managing an election with different sets of ballots for in-person and mail-in voting, the public interest weighs heavily in favor of issuing the stay. When "the State is the appealing party, its interest and [aforementioned] harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017). The Texas Legislature passed HB 25 in 2017, and state election officials have planned for this election accordingly. The state election machinery is already well in motion. A stay here, while the court can consider argument on the merits, will minimize confusion among both voters and trained election officials. *Id.*

\*     \*     \*

The Secretary's motion to stay the district court's preliminary injunction pending appeal is GRANTED. The injunction, in all its particulars, is STAYED pending further order of this court.