# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 12, 2022

Lyle W. Cayce
Clerk

————

No. 21-51151

————

Jose Garcia,

*Movant—Appellant*,

*versus*

David Matson; Barbara Matson; Yolanda Garret,
*individually and on behalf of all others similarly situated*,

*Plaintiffs—Appellees*,

*versus*

NIBCO, Incorporated,

*Defendant—Appellee*.

————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CV-717

————

Before Smith, Clement, and Haynes, *Circuit Judges*.

Per Curiam:*

Appellant Jose Garcia is a member of a class action filed by Plaintiffs-Appellees David Matson, Barbara Matson, and Yolanda Garret on behalf of themselves and those similarly situated. Garret and the Matsons alleged that Defendant-Appellee NIBCO manufactured defective products that were used in residential plumbing and that NIBCO's manufacturing defects caused or could cause leaks and subsequent damage to class-member homes. Plaintiffs reached a settlement with NIBCO, which the lower court provisionally approved. During the notice period, Garcia objected to the settlement, arguing that the prerequisites for class certification under Rule 23(a) of the Federal Rules of Civil Procedure could not be met because the affected individuals in the class had interests adverse to those class members that were not yet affected but could be in the future. He also argued that the settlement was otherwise inadequate. The district court overruled his objections and entered a final order certifying the class and approving the settlement.

For the reasons set forth below, we AFFIRM.

I.

NIBCO manufactured and sold polyethylene tubes, fittings, and clamps ("PEX products"), which were utilized nationally in the plumbing systems of various new residential constructions. Some homes that had been built with NIBCO PEX products later experienced leaks, and in December 2013, homeowners in seven states—New Jersey, Pennsylvania, Alabama, Georgia, Texas, Oklahoma, and Tennessee—brought a nationwide putative class action against NIBCO for alleged manufacturing defects. *Cole v. NIBCO, Inc.*, No. 13-CV-07871, 2015 WL 2414740, at *1, *4 (D.N.J. May 20,

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

2015). On April 11, 2019, that case ended with a settlement between NIBCO and the *Cole* class members; however, that settlement excluded homeowners in Texas, like the Matsons, and homeowners in Alabama, like Garret.

As a result, on June 19, 2019, the Matsons brought their own putative class action against NIBCO, alleging that NIBCO PEX products were defective and "caused or will cause them and [others] to suffer water damage to their residences." They sought to certify a Rule 23(b)(3) class, and Garret later joined the Matsons as a class representative.

By December 2020, Plaintiffs had reached a settlement agreement with NIBCO. Per their agreement, the settlement class would cover homeowners in Texas and Alabama that had PEX products installed in their homes (at least 8000 homeowners), including both individuals that had already experienced leaks (the "wet" class members) and individuals that had *not* yet experienced leaks (the "dry" class members). The settlement fund was set at $7,650,000.00. Individuals who had already experienced leaks were eligible for reimbursement between 50% and 75% of the costs they spent on leak repairs and damages. If those individuals experienced three or more qualifying leaks, then 50% to 75% of the cost of replumbing would be covered. As for the dry class members, if those individuals experienced a leak at some point prior to May 16, 2025, they too would receive between 50% and 75% of the costs for repair and other damages. If a third leak occurred prior to May 16, 2025, 50% to 75% of the cost of replumbing would also be covered. Finally, NIBCO agreed to provide discounted plumbing services and to pay attorneys' fees separately from the $7,650,000.00 fund.

On February 23, 2021, the district court granted preliminary approval of the settlement. Finding the requirements of Rule 23(a) preliminarily met, the court provisionally certified a Rule 23(b)(3) class for settlement purposes. *See* FED. R. CIV. P. 23(b)(3), (c)(2)(B). The district court also

preliminarily approved the settlement as fair and reasonable and authorized notice to all putative class members.

Garcia was the sole objector to the settlement. He argued that the settlement should not be approved because: (1) the class representatives do not adequately represent the class; and (2) "the settlement fund is 'grossly inadequate.'" As to that first reason, Garcia argued that an intra-class conflict existed between the wet class members and the dry class members. The district court held a hearing, overruled both objections, and issued a final order granting class certification and approving the settlement.

## II.

The district court had original jurisdiction under 28 U.S.C. § 1332(d)(2), and we have appellate jurisdiction over Garcia's timely appeal under 28 U.S.C. § 1291. We review the approval of a class action settlement for abuse of discretion. *In re Deepwater Horizon*, 739 F.3d 790, 798 (5th Cir. 2014). This deferential standard recognizes "the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003).

## III.

Garcia's first objection to the settlement was based upon an argument that the class certification was improper because both class representatives were "wet class members" (as was he), so they could not, in his view, properly represent the "dry class members." Class certification, among other things, requires "adequacy of representation" as described in the rule. FED. R. CIV. P. 23(a)(4).

No. 21-51151

In its order issuing class certification and final approval for the settlement, the district court overruled Garcia's objection regarding the intra-class conflict, concluding that Garcia lacked standing to bring this objection. The district did so explicitly, stating: "Garcia's objections to the adequacy of the class representatives are overruled. To start, Garcia—who claims to have sustained approximately 20 leaks in his home—doesn't have standing to complain about the adequacy of representation for class members who haven't experienced a leak." In a footnote, the district court cited to several cases supporting its conclusion that Garcia lacked standing to raise this objection. The district court then concluded that, even if Garcia did have standing, his adequacy argument was not meritorious.

Although Garcia's briefing discusses the merits of the adequacy issue at length, Garcia failed to appeal the district court's ruling on standing. In fact, his opening brief completely failed to mention standing. We have repeatedly instructed litigants that we will not address an argument if they "fail[] to adequately brief the argument on appeal," let alone if they fail to brief it altogether. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). With a few exceptions not implicated here, we will not consider "grounds for reversal not set forth in a petitioner's (or appellant's) opening brief." *Rodriguez v. INS*, 9 F.3d 408, 414 n.15 (5th Cir. 1993); *cf., e.g.*, *United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) ("A single conclusory sentence in a footnote is insufficient to raise an issue for review."); *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) ("Reagan, who is represented by appointed counsel, does nothing beyond listing these points of error—he offers no further arguments or explanation. This is a failure to brief and constitutes waiver."); *United States v. Stalnaker*, 571 F.3d 428, 439–40 (5th Cir. 2009) ("Although she describes a laundry list of grievances, she does not fully explain them and often does not cite the record or relevant law. As a result, most of the matters are waived for inadequate briefing."

No. 21-51151

(footnote omitted)).    Accordingly, we do not address the merits of the objection regarding the adequacy of representation.[1]

IV.

Garcia's objection to the settlement itself is properly before us, as the standing ruling does not affect that issue.  As to this objection, he contends that the settlement fund is inadequate.  Rule 23(e) provides that to approve a settlement, the district court must first find that the settlement "is fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).  There are several considerations that the Rule imposes, including: (1) adequate representation by the class representatives; (2) arm's length negotiations; (3) that relief takes into account the costs of litigation, the effectiveness of distributing relief, and how attorneys' fees are distributed; and (4) that "the proposal treats class members equitably relative to each other."  *Id.*  Similarly, this court has previously articulated six factors that district courts should consider in determining whether the settlement fund is adequate:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the

---

[1] Garcia has since offered two frivolous arguments for considering the standing issue.  He alleges that he could not have appealed the standing ruling because it was not expressly mentioned in the final judgment.  That is an obvious inaccuracy we need not address further. *See, e.g.*, FED. R. CIV. P. 54(a); FED. R. APP. P. 3(c)(1)(B), (c)(4). He also argues that the district court's standing ruling was "dicta" because the court addressed the adequacy issue on the merits.  Of course, that is also frivolous since, among other things, standing is jurisdictional. *See Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 567 n.1 (5th Cir. 2020).  Additionally, as noted above, adequacy of representation is part of the requirements for certifying a class, so the district court needed to address it whether or not there was an objection. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Thus, he fails to support any basis for our consideration of his waived argument.

opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

We note again that the standard of review is highly deferential, and the district court here thoroughly engaged with both the Rule 23(e)(2) and *Reed* factors. We see no abuse of discretion in the district court's well-reasoned analysis and highlight the facts that best capture the fairness and adequacy of the settlement. First, Garcia does not dispute the district court's finding that this settlement "either meets or exceeds" the *Cole* settlement, and the *Cole* class members incurred the additional cost of five years of litigation before reaching that settlement. The settlement offers payment at a percentage of an individual's total losses, and that same percentage applies to both wet and dry class members. Attorneys' fees are not distributed out of the fund (unlike in *Cole*). Moreover, individuals who have PEX products in their homes and had not yet experienced a leak could always opt out, as 415 individuals in this case did.[2] Finally, members of the settlement class may still take advantage of NIBCO's Limited Warranty for as long as the Limited Warranty period runs, even if that period runs after May 2025. The Limited Warranty has its own procedure, which is overseen by a Special Master appointed under the settlement but paid separate from the settlement fund. Given all of the above-listed aspects, we see no basis for determining that the district court abused its discretion in finding the settlement fund "fair, reasonable, and adequate."

AFFIRMED.

---

[2] Indeed, Garcia himself opted out of the class but then, inexplicably, opted back in to challenge the settlement.