

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00040-CR

_____

ROBERT CARTER BLACKWELL, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1788824

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Robert Carter Blackwell appeals his convictions for five criminal offenses committed against two victims.[1]  In a single issue, Blackwell argues that the trial court erred by admitting State's Exhibit 8, a recording of a 911 call, over his Confrontation Clause objection.  We affirm.

### II. BACKGROUND

Blackwell had a romantic relationship with E.M. and often stayed overnight with her and her young daughter, R.M.[2]  According to E.M., her relationship with Blackwell was tumultuous because of his alcohol-fueled jealousy and aggressive behavior.

On the morning of October 20, 2022, E.M. broke up with Blackwell after R.M. told her that Blackwell had hit her in the stomach with a belt.  Later that day, when E.M. returned home after picking up R.M. from school, she found Blackwell waiting for her inside the house.

---

[1]As discussed in greater detail below, Blackwell was convicted on two counts of aggravated assault with a deadly weapon, one count of assault of a household member with a previous conviction, and two counts of unlawful restraint.

[2]Because R.M. is a minor, we use initials to refer to her and her family members. *See* Tex. R. App. P. 9.10(a)(3); *Esparza v. State*, No. 02-18-00196-CR, 2019 WL 5608233, at *1 n.1 (Tex. App.—Fort Worth Oct. 31, 2019, pet. ref'd) (mem. op., not designated for publication).

Blackwell began angrily yelling at E.M. and R.M. and charged at them with a kitchen knife. He grabbed E.M. by the neck and then cut his own hands and neck, telling both victims that he intended to kill them and himself. After a struggle in which E.M. was knocked to the ground and had her shirt torn, she and R.M. were able to escape by running to their car. Blackwell slashed one of the car's tires, but E.M. was nevertheless able to drive away.

As soon as she started driving, E.M. called 911. Because E.M. and R.M. speak little English, the 911 operator linked an interpreter to the call. E.M. eventually drove to a nearby tire shop to get her slashed tire repaired. The police met her there, interviewed both victims, and took photographs.

Ultimately, Blackwell was indicted for two counts of aggravated assault with a deadly weapon (Counts One and Two), one count of bodily injury to a household member by impeding normal breathing or circulation (Count Three), one count of assault of a household member with a previous conviction (Count Four), and three counts of unlawful restraint (Counts Five, Six, and Seven). *See* Tex. Penal Code Ann. §§ 20.02(a), (c)(2)(A), 22.01(a), (b)(2)(A), (b-3), 22.02(a)(2). Blackwell pleaded not guilty to all charges, and a jury trial was held.

After hearing all of the evidence, the jury found Blackwell guilty on Counts One, Two, Four, Five, and Six.[3] Blackwell elected to have the trial court assess punishment. Following a punishment hearing, the trial court sentenced Blackwell to thirty years' imprisonment on Counts One and Two and twenty years' imprisonment on Counts Four, Five, and Six.[4] This appeal followed.

## III. Discussion

In a single issue, Blackwell argues that the trial court erred by admitting State's Exhibit 8, a recording of the 911 call that E.M. initiated following Blackwell's attack. According to Blackwell, the admission of this exhibit violated his rights under the Sixth Amendment's Confrontation Clause because it included testimonial hearsay statements made by an interpreter who was not present at trial. Blackwell's argument is both unpreserved and meritless.

### A. Applicable Law and Standard of Review

The Sixth Amendment's Confrontation Clause, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 38, 42, 124 S. Ct. 1354, 1357, 1359 (2004); *Langham v. State*,

---

[3]The jury found Blackwell not guilty on Count Three, and the State waived Count Seven before the charge was submitted to the jury.

[4]These sentences are to run concurrently.

4

305 S.W.3d 568, 575 (Tex. Crim. App. 2010) (citing U.S. Const. amend. VI). "[T]he most important instances in which the [Confrontation] Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial." *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S. Ct. 1143, 1155 (2011). Once a defendant raises a Confrontation Clause objection, the burden shifts to the State to prove either (1) that the proposed statement does not contain testimonial hearsay and thus does not implicate the Confrontation Clause or (2) that the statement does contain testimonial hearsay but is nevertheless admissible. *See De la Paz v. State*, 273 S.W.3d 671, 680–81 (Tex. Crim. App. 2008) (citing *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374).

In *Davis v. Washington*, the United States Supreme Court explained the distinction between testimonial and nontestimonial statements:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency[] and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 813, 822, 126 S. Ct. 2266, 2273–74 (2006) (footnote omitted). A court considers the totality of the circumstances in determining whether a statement is testimonial. *Clark v. State*, 282 S.W.3d 924, 931 (Tex. App.—Beaumont 2009, pet. ref'd).

Generally, we review a trial court's decision to admit evidence under an abuse-of-discretion standard. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). But

5

when, as here, the admission of evidence involves a constitutional legal ruling—in this case, whether a statement is testimonial or nontestimonial for Confrontation Clause purposes—we give almost total deference to the trial court's determination of historical facts; however, we review de novo the trial court's application of the law to those facts. *See Langham*, 305 S.W.3d at 576; *Wall*, 184 S.W.3d at 742 (applying hybrid standard of review to issue of whether statement was testimonial).

## B. Blackwell Failed to Preserve His Appellate Complaint

To preserve an issue for appellate review, a party must (1) make a timely objection or request to the trial court that, unless apparent from the context, sufficiently states the specific grounds for the requested ruling and (2) obtain an adverse ruling. *See* Tex. R. App. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Confrontation Clause complaints are subject to these preservation requirements. *See Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010). Thus, by failing to obtain an adverse ruling on a Confrontation Clause objection, a party forfeits that complaint on appeal. *See Linney v. State*, 401 S.W.3d 764, 774 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding that appellant had failed to preserve error even though he had objected on Confrontation Clause grounds at trial because he had failed to obtain an adverse ruling on his objection); *see also Campbell v. State*, No. 01-19-00582-CR, 2020 WL 4128925, at *3 (Tex. App.—Houston [1st Dist.] July 21, 2020, pet. ref'd) (mem. op., not designated for publication) (same); *Sterner v. State*, No. 13-13-00048-CR, 2013 WL

9581814, at *2 (Tex. App.—Corpus Christi–Edinburg Dec. 5, 2013, pet. ref'd) (mem. op., not designated for publication) (same).

Here, although Blackwell objected to the admission of State's Exhibit 8 on Confrontation Clause grounds, he never obtained an adverse ruling on his objection. Blackwell raised his objection during a brief colloquy outside the presence of the jury. The basis for his objection was that the interpreter on the 911 recording was not present at trial, so there was not "a sworn witness saying I swear this is exactly what was being said" by E.M. and R.M. on the 911 call.[5] But before the trial court ruled on the objection, the State and Blackwell agreed to a procedure whereby the sworn court interpreter would listen as the 911 recording was being played and would raise her hand if she heard a translation error. If the court interpreter raised her hand, the prosecutor would stop playing the 911 recording; both parties would approach the bench so that the interpreter could explain the translation error to them and the trial court outside the jury's presence; and then, if there were no objections, the court interpreter would state on the record what had actually been said. Using this procedure, the 911 recording was admitted and published to the jury with five minor translation corrections.[6]

---

[5]The 911 call contained statements made by both victims.

[6]These corrections included (1) changing a date of birth from "April 17" to "April 16," (2) including an omitted reference to Blackwell's cutting himself, (3) correcting the name of the ice cream shop at the cross-street where E.M. made the 911 call, (4) changing the phrase "blue shirt" to "blue hoodie," and (5) including an

7

By agreeing to the procedure outlined above, Blackwell implicitly withdrew his Confrontation Clause objection, and as a result, the trial court never ruled on it. Because Blackwell never obtained an adverse ruling on his objection, he failed to preserve his appellate complaint. *See Campbell*, 2020 WL 4128925, at *3; *Linney*, 401 S.W.3d at 774; *see also Arcos v. State*, No. 01-10-00342-CR, 2011 WL 2652262, at *3 (Tex. App.—Houston [1st Dist.] July 7, 2011, pet. ref'd) (mem. op., not designated for publication) (holding error was not preserved for appellate review when the complaining party made an initial objection but subsequently withdrew it).

## C. Blackwell's Complaint Is Meritless

Even if Blackwell had preserved his complaint, we would overrule it on the merits. Blackwell contends that the interpreter's statements on the 911 recording constitute testimonial hearsay based solely on the fact that "no emergency was on[]going" when E.M. made the 911 call. But the record belies this assertion. E.M. initiated the 911 call "as soon as [she] got out of the house while [she] was driving" to escape from Blackwell—who had just slashed her tire. Under these circumstances, it is apparent that E.M. and R.M. were facing an ongoing emergency and that the 911 call constituted a cry for help. Thus, their statements—and those of the interpreter[7]—are

---

omitted statement from E.M. that she had run out of her house, gotten in her car, and driven away.

[7]We note that, although we have not found any cases from the United States Supreme Court or the Texas Court of Criminal Appeals addressing this issue, federal circuit courts have held that, generally, an interpreter is no more than a language

8

nontestimonial. *See Davis*, 547 U.S. at 822, 126 S. Ct. at 2273–74; *Aguilar v. State*, No. 02-22-00271-CR, 2023 WL 6631526, at *7 (Tex. App.—Fort Worth Oct. 12, 2023, pet. ref'd) (mem. op., not designated for publication) (explaining that "911 calls initiated to summon police assistance are generally nontestimonial because they are 'a cry for help' or 'the provision of information enabling officers to end a threatening situation'" (quoting *Davis*, 547 U.S. at 832, 126 S. Ct. at 2279)); *see also Rodgers v. State*, No. 09-09-00359-CR, 2010 WL 3043705, at *2 (Tex. App.—Beaumont Aug. 4, 2010, no pet.) (mem. op., not designated for publication) (listing cases in which courts concluded that similar 911 calls were nontestimonial). Accordingly, even if Blackwell had preserved his Confrontation Clause complaint, we would nevertheless conclude that the trial court did not abuse its discretion by admitting State's Exhibit 8.

We overrule Blackwell's sole issue.

## IV. CONCLUSION

Having overruled Blackwell's sole issue, we affirm the trial court's judgment.

---

conduit, meaning that the translation does not create any additional hearsay. *See, e.g.*, *United States v. Vidacak*, 553 F.3d 344, 352 (4th Cir. 2009); *United States v. Sanchez-Godinez*, 444 F.3d 957, 960 (8th Cir. 2006). Applying this "language-conduit" principle, the Ninth and Fifth Circuits have both concluded that a defendant had no constitutional right to confront an interpreter. *See United States v. Orm Hieng*, 679 F.3d 1131, 1139 (9th Cir. 2012); *United States v. Budha*, 495 F. App'x 452, 454 (5th Cir. 2012). To the extent that the interpreter on the 911 call was merely E.M.'s language conduit, her translations would not implicate Blackwell's confrontation rights at all because E.M. was present at trial and subject to cross-examination. *See Budha*, 495 F. App'x at 454.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 9, 2025

10